## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **CALLIDUS CAPITAL CORPORATION,** | § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | |
| **ESCO MARINE, INC., ESCO METALS, LLC, ESCO SHREDDING, LLC, TEXAS BEST RECYCLING, LLC, TEXAS BEST EQUIPMENT, LLC, RICHARD JAROSS, EMJ HOLDINGS, LLC, ELKA JAROSS, ANDREW LEVY, REDSTONE CAPITAL CORP., ALBERTO GARCIA, and JOHN KRISTOPHER WOOD,** | § § § § § § § § § § § § | Civil Action No. 1:14-cv-00270 |
| **Defendants.** | § | |

### PLAINTIFF'S EMERGENCY MOTION FOR APPOINTMENT OF A RECEIVER

1. Esco has reached the point of financial disintegration:

    (a) the company is hopelessly insolvent and ceased operations two weeks ago, resulting in the layoff of more than 200 employees without back pay and without any prospects for future work;[1]

    (b) the potential buyer of the company, Marcella Molinari Enterprises, has backed away;

    (c) US Navy seizure of the company's most significant operational asset, the aircraft carrier USS Saratoga, is imminent;

    (d) nearly 300 unsecured vendors and trade creditors are owed more than $3 million, such that Esco now has no ability to purchase basic and necessary services and goods;

---

[1] *See, e.g.*, Metal Recycling Company Past Due on Employees' Paychecks, http://www.krgv.com/news/local-news/Metal-Recycling-Company-Past-Due-on-Employees-Paychecks/31436472 (last visited Feb. 27, 2015) (reporting that Esco "is past due on its paychecks to employees"); Lawsuit Offers Glipse Into Esco Marine's Finances, http://www.krgv.com/news/local-news/Lawsuit-Offers-Glimpse-into-Esco-Marine-s-Finances/31325360 (last visited Feb. 27, 2015) (reporting that Esco sent more than 200 employees home without pay).

(e) the value of the business has crashed from more than $31 million to $10-12 million and could only rebound by becoming operational;

(f) Esco has no source of funds—it has borrowed more than $31 million from Plaintiff Callidus and, under the loan agreements, Esco has borrowed millions of dollars beyond its borrowing base and is ineligible for any further credit financing;

(g) Defendants Richard Jaross and Andrew Levy (who together own approximately 66% of the company) and other shareholders refuse to make any capital infusions (except that this past week Mr. Jaross personally paid a $16,000 electricity bill when the utility threatened to shutoff power to the facility (making the Saratoga inaccessible to security personnel in breach of the Navy contract) and unsafe to the community—indeed the ship became unmoored during this time; and

(h) in a desperate effort to generate cash, Esco has attempted to sell Callidus collateral (equipment and scrap metal generated from the dismantling of the Saratoga).[2]

2. Esco's bankruptcy is imminent.

3. As an alternative to bankruptcy, Plaintiff seeks the appointment of a Receiver to return the company to operational status and then to sell the business as a going concern in an open process to maximize value for all stakeholders: the community, employees, creditors, and shareholders. Messrs. Jaross and Levy and the current board of directors, and Defendants Kristopher Wood and Alberto Garcia acting at their direction, have failed miserably with this business and then acted nefariously in an attempt to save only their investment—to the detriment of every other stakeholder. Current ownership and management have destroyed the business. By appointing a Receiver, the Court would engender commercial confidence, enable further extensions of credit, protect and preserve Esco, and create a reasonable opportunity to save the business.

---

[2] The facts set forth this motion are supported by the Declaration of Craig L. Boyer, attached as Exhibit A, and the Declaration of David Sieradzki, attached has Exhibit B. Additional exhibits to this motion are attached to each respective Declaration as Exhibit A-1 and Exhibits B-1 through B-3.

4. "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *World Fuel Servs. Corp. v. Moorehead*, 229 F. Supp. 2d 584, 596 (N.D. Tex. 2002). Under Federal Rule of Civil Procedure 66, this Court "has authority to place into receivership assets in litigation to 'to preserve and protect the property pending its final disposition.'" *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (quoting *Gordon v. Washington*, 295 U.S. 30, 37 (1935)). "The appointment of a receiver can be sought by anyone showing an interest in certain property or a relation to the property and control and ownership thereof such as to justify conservation of the property by a court officer." *Id.* (internal quotation marks and citation omitted). It is well settled that secured creditors—like Callidus—"have a well established interest in the property sufficient to support the appointment of a receiver." *Brill & Harrington Invs. v. Vernon S&L Ass'n*, 787 F. Supp. 250, 253 (D.D.C. 1992); *see also Am. Bank & Trust Co. v. Bond Intern. Ltd.*, No. 06-CV-0317-CVE-FMH, 2006 WL 2385309, at *8 (N.D. Okla., Aug. 17, 2006).

5. In exercising discretion to appoint a receiver, federal courts consider the following factors: "a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 242-43 (5th Cir. 1997) (internal quotation marks and citation omitted). Here, these factors militate in favor of appointment of a receiver.

6. As detailed in its previous pleadings, Callidus has asserted valid claims against Esco for breach of contract (including failure to repay the loan), foreclosure of secured property, conversion, and theft. *See* Dkt. Nos. 1, 3, 31, & 37. Esco's latest actions, along with its history

of deception and conversion, demonstrate that fraudulent conduct is occurring or will occur to frustrate Callidus' ability to recover the more than $31 million that it loaned to Esco. Callidus has received reports in the marketplace that Esco attempted to sell secured collateral for pennies on the dollar and told current customers to stop paying Esco—deceptive actions designed to prevent Callidus' recovery. In any event, Esco's recent shutdown, its default under the Navy contracts, and its inadequate efforts to safeguard the USS Saratoga prove there is imminent danger that the collateral will be diminished in value or even lost entirely (particularly if the Navy cancels its contracts because of Esco's prolonged shutdown).

7. Esco cannot resume operations with current management in place. The Loan Agreement does not require Callidus to fund Esco, and Callidus will not fund the current management team that has misreported inventory, misstated borrowing base reports, fraudulently converted collateral, and directed Esco (and its customers) to stop depositing funds in the Blocked Account—not to even mention Esco's abysmal economic performance under their management. *See, e.g.*, Dkt. Nos. 3 ¶¶ 4, 24-30, 39-43; 36 ¶¶ 2-3. If Esco's current management were allowed to remain in place, there is a real risk that Callidus' collateral will be lost, preventing the opportunity for any legal remedy. Moreover, although Callidus has asked for a preliminary injunction ordering Esco to deposit funds received into the Blocked Account, little or no funds are coming in given Esco's suspended operations (and its instruction to customers not to pay). Further equitable relief of receivership is necessary. Without a receiver, Esco will have no hope to resume operations, save Navy contracts, or return over 200 employees to work. Receivership is an extraordinary remedy, but this is an extraordinary situation where the opportunity to improve the situation outweighs any harm that appointing a receiver may cause. A receiver would report to the Court and step in on operational matters in the best interest of all

creditors, including Esco's unpaid employees and its unsecured creditors, which, as of a February 9 Esco report, are collectively owed over $3,000,000. *See* Exhibit A-1.

8. Callidus asked Esco to stipulate to a receiver. But it refused, citing among other concerns, the need for necessary security clearances to dismantle the USS Saratoga. This issue is a red herring. There are numerous consulting firms that possess the necessary Maritime Administration and Navy security clearance, and they are available for hire by a Receiver. Even closer to home, the Receiver could retain either of the two Brownsville ship recyclers, All Star Metals or International Shipbreaking, to operate Esco until a sale of the business can be effected.

9. Callidus requests that this Court appoint David Sieradzki (*see* Exhibit B-1), Managing Director of Duff & Phelps Canada Restructuring ("Duff & Phelps")—with rights and obligations as more fully detailed in the attached Order—contingent on his obtaining, or otherwise contracting for, the appropriate security clearances within fourteen (14) days of this Court's order. On July 2, 2014, Esco retained Duff &Phelps to monitor and consult with respect to the company's operations and performance. *See* Exhibit B-2. Duff & Phelps has familiarized itself with Esco's business since the date of its engagement with Esco, possesses the necessary business qualifications, and has served as a court-appointed receiver for numerous other companies. *See* Exhibit B-3.

10. Callidus recognizes that the Court has denied previous requests for emergency hearings from both parties, finding insufficient reason to proceed without full briefing. Esco, however, has deteriorated such that at any moment the Navy could cancel its contracts and redeem the vessels that are the company's primary assets and Callidus' principal collateral. Every day that goes by increases the risk of damage to the collateral, and a receiver would benefit both parties by saving the Navy contracts, allowing Esco to resume operations, and putting 200 people back to work. Moreover, the law underlying this motion is well-settled and

most (if not all) of the factual issues underlying the motion have been briefed extensively as part of other motions pending before this Court. *See, e.g.*, Dkt. Nos. 3, 29, 31, 33, 36, & 37. In addition, Callidus' counsel has discussed receivership with Esco's counsel numerous times, as more fully detailed in the Certificate of Conference, below. Therefore, Callidus submits that there is no need for further briefing. If, however, the Court determines that further briefing is necessary, Callidus respectfully requests that the Court set this motion for hearing on March 9 (with the parties' other pending motions) and allow Esco to file a written response by March 6. In that event, Callidus would waive any reply brief and address any issues during the hearing.

    Respectfully submitted,

    BRACEWELL & GIULIANI LLP

By:   /s/ *Bradley J. Benoit*
      Bradley J. Benoit
      State Bar No. 24012275
      Southern District of Texas Bar No. 24495
      Attorney-In-Charge

711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212
brad.benoit@bgllp.com

OF COUNSEL:

BRACEWELL & GIULIANI LLP

Ralph D. McBride
State Bar No. 13332400
Bryan S. Dumesnil
State Bar No. 00793650
Jonathon K. Hance
State Bar No. 24065364
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

ralph.mcbride@bgllp.com
bryan.dumesnil@bgllp.com
jonathon.hance@bgllp.com

DICKINSON WRIGHT PLLC
Thomas G. McNeill
500 Woodward Avenue, Suite 4000
Detroit, Michigan, 48226
(313) 223-3632
tmcneill@dickinsonwright.com

COUNSEL FOR PLAINTIFF
CALLIDUS CAPITAL CORPORATION

## CERTIFICATE OF CONFERENCE

I hereby certify that on Thursday, February 26, 2015, counsel for Callidus conferenced with Michael Rodriguez multiple times by telephone regarding Callidus' proposal for a stipulated receiver. On Friday, February 27, 2015, counsel for Callidus again had a lengthy telephone conversation with Michael Rodriguez regarding Callidus' proposal for a stipulated receiver. Counsel for Callidus also conferenced with Michael Rodriguez by telephone on Saturday, February 28 regarding the benefits to both parties of a stipulated receiver. On Tuesday, March 3, 2015, counsel for Callidus emailed Michael Rodriguez regarding its proposal for a stipulated receiver and alerted him of Callidus' intent to file an emergency motion for appointment of a receiver if Esco did not stipulate to the requested relief. Counsel for Callidus provided Michael Rodriguez a copy of a proposed order appointing a receiver. Esco has refused to consent to a stipulated receiver.

/s/ *Bradley J. Benoit*
Bradley J. Benoit
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2015, a true and correct copy of this document was filed electronically with the Clerk of the United States District Court and forwarded electronically to all counsel:

/s/ *Bradley J. Benoit*
Bradley J. Benoit
Counsel for Plaintiff

#4829588.5